IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SARAH R.,

                              Plaintiff,

          v.                                    Civil Action No.
                                                3:19-CV-0798 (DEP)

ANDREW M. SAUL, Commissioner of Social
Security,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM       PETER A. GORTON, ESQ.
Attorneys at Law
1500 East Main Street
Endicott, NY 13761

FOR DEFENDANT

HON. GRANT C. JAQUITH          OONA M. PETERSON, ESQ.
United States Attorney for the   Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral argument was conducted in connection with those motions on July 29, 2020, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Plaintiff's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Social Security Act, is VACATED.

3)    The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)    The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.


David E. Peebles
U.S. Magistrate Judge


Dated:    August 10, 2020
          Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SARAH R.,

                    Plaintiff,

vs.                                        3:19-CV-798

ANDREW SAUL, Commissioner
of Social Security,

                    Defendant.

-------------------------------------------------------x

                    *DECISION* - July 29, 2020

        James Hanley Federal Building, Syracuse, New York

                HONORABLE DAVID E. PEEBLES

            United States Magistrate Judge, Presiding


                    APPEARANCES (by telephone)

For Plaintiff:      LACHMAN, GORTON LAW FIRM
                    Attorneys at Law
                    1500 East Main Street
                    Endicott, NY 13761
                        BY:  PETER A. GORTON, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of Regional General Counsel
                    26 Federal Plaza
                    New York, New York 10278
                        BY:  OONA M. PETERSON, ESQ.



                *Eileen McDonough, RPR, CRR*
            *Official United States Court Reporter*
                    *P.O. Box 7367*
                *Syracuse, New York 13261*
                    *(315)234-8546*

*Decision - 19-cv-798 - 7/29/2020*                              2

1          THE COURT:  Let me begin by thanking counsel for

2    excellent presentations.  I've enjoyed working on this case

3    with you.

4          Plaintiff has commenced this proceeding pursuant to

5    42, United States Code, Sections 405(g) and 1383(c)(3) to

6    challenge an adverse determination by the Commissioner of

7    Social Security finding that she was not disabled at the

8    relevant times and, therefore, ineligible for the benefits

9    sought.

10         The background is as follows.  The plaintiff was

11   born in February of 1986.  She is currently 34 years of age.

12   She was 30 years old at the time of the onset of her alleged

13   disability in January of 2016.  She was, I should say,

14   approaching 30; she was a month shy of 30 years old.  She

15   stands somewhere between 5-foot-4 and 5-foot-5 in height, and

16   weighs between 128 and 132 pounds, depending on the reference

17   in the record.

18         Plaintiff did live in Binghamton with her mother,

19   her 13-year-old son, an adult brother, and the mother's

20   boyfriend; however, since May of 2017 she has resided with a

21   partner/friend in an apartment.  Plaintiff completed

22   ninth grade and entered the tenth grade; she did not complete

23   school, however.  She was in special education classes,

24   including an 8:1:1 class based on her classification as

25   emotionally disturbed.  She is right-handed.  Plaintiff no

1   longer has a driver's license.  She had one but lost it as a

2   result of some sort of Vehicle & Traffic Law infraction.

3            Plaintiff stopped working in January of 2016.

4   Prior to that time she worked in various capacities, both in

5   retail as a cashier and as a server.  Virtually all the

6   positions she occupied were up to the five month duration.

7   Plaintiff claims that she is unable to work based upon her

8   mental condition, as well as her migraine headaches.  She

9   suffers from post-traumatic stress disorder, which she claims

10  is worsening; migraine headaches, which she claims she

11  suffers from two to three a week; and anxiety.

12           So, physically, there is a comorbid condition of

13  migraines.  The migraines cause her to suffer or experience

14  nausea and vision issues.  She treats her migraines in many

15  ways, including through the use of medical marijuana.

16  Plaintiff was involved in motor vehicle accidents in

17  December of 2012 and again in February of 2018, the latter of

18  which resulted in a right shoulder injury.

19           Addressing her migraines, she has undergone

20  Magnetic Resonance Imaging testing, or an MRI, in May of

21  2016.  That testing is reflected at pages 348 and again at

22  354 of the Administrative Transcript.  The impression of that

23  testing was, quote, "No evidence of acute intracranial

24  abnormality."  Plaintiff also underwent EEG testing, also in

25  May of 2016.  It is reported at 349 and 355 of the

1   Administrative Transcript.  The interpretation and clinical

2   correlation includes, quote, "This is a normal awake drowsy

3   and sleep EEG.  No ictal or epileptiform discharges were

4   seen.  Correlate clinically."

5          The plaintiff suffers, as I indicated, from mental

6   conditions, including PTSD, which stems at least in part from

7   the fact that she experienced sexual abuse as a child.  She

8   also experiences attention deficit and hyperactivity

9   disorder, or ADHD, a mood disorder, anxiety, and bipolar

10  disorder.  She was in and out throughout her life of mental

11  institutions, special schools, and group homes.  She was last

12  hospitalized in 2015.

13         She has a history of suicide attempts, according to

14  280 and 281 of the Administrative Transcript.  In October of

15  2012 she overdosed on Xanax.  That's at page 294.  She was

16  hospitalized due to a suicide attempt on September 22, 2017.

17  That's at 488, 489.  Her treating physician, Dr. Aranda, had

18  to call 911 on October 2, 2015, based upon her conduct during

19  an exam.  That's at page 296.

20         She testified that she has difficulty sleeping,

21  nightmares, crying spells, there is evidence of violent

22  behavior during manic spells, and as one indication of that

23  she was prosecuted for threatening to blow up the house of a

24  judge and received eight months of probation.  She pled

25  guilty, and that led to probation, to criminal contempt; her

1   girlfriend apparently had an order of protection against her

2   at the time.

3           Her primary physician is Dr. Arvin Aranda, who she

4   has seen for twelve years.  She sees Dr. Aranda one to two

5   times per month.  She also treats with LPN Juliane Loucks at

6   Dr. Aranda's office.  Plaintiff has received care from Family

7   and Children's Society for the last six or seven months

8   preceding the hearing in this matter, including from the

9   nurse practitioner Caroline Murphy and licensed clinical

10  social worker Faith Finch.  She also has treated with

11  Dr. Subu Dubey and Dr. Ahmad Alwan.

12          The plaintiff's medications over time have included

13  Flexeril, Fioricet as needed for headaches, Vicodin, Xanax,

14  Zofran, Propranolol, Hydroxyzine, Trazodone, Paxil, medical

15  marijuana, as I indicated, Citalopram.  She was also on

16  Seroquel and Lithium, but experienced adverse reactions to

17  those medications.

18          In terms of activities of daily living, plaintiff

19  is able to dress, groom, clean, do laundry, some shopping,

20  television, music, she sees her mother daily, she goes out

21  but only if accompanied, including for use of public

22  transportation.  In terms of cooking, she told Dr. Slowik

23  that she does cook, but Dr. Jenouri she does not.  Plaintiff

24  smokes and has since age 17.  She smokes five to eight

25  cigarettes per day.

1          Procedurally, plaintiff applied for Title XVI

2    Supplemental Security Income benefits on February 7, 2016,

3    alleging a disability onset date of January 13, 2016.  In her

4    function report she claims inability to work based on bipolar

5    disorder, manic depression, anxiety, social and panic

6    disorder, high blood pressure, a pineal cyst on the brain, an

7    ovarian cyst, an irregular heart beat, eye problems,

8    obsessive compulsive disorder, seizures, and ADHD.

9          A hearing was conducted on May 22, 2018 by

10   Administrative Law Judge Jo Ann Draper to address plaintiff's

11   claim for benefits.  ALJ Draper issued an unfavorable

12   decision on July 30, 2018.  That decision became a final

13   determination of the Commissioner on May 17, 2019 when the

14   Social Security Administration Appeals Council denied

15   plaintiff's request for review.  This action was commenced on

16   July 3, 2019, and is timely.

17          In her decision ALJ Draper applied the familiar

18   five-step test for determining disability.  She found that

19   plaintiff had not engaged in substantial gainful activity

20   since February 7, 2016, the date of her Title XVI

21   application, although she noted that there was some earnings

22   reflected since that time.

23          At step two, the ALJ concluded that plaintiff

24   suffers from severe impairments that impose more than minimal

25   limitations on her ability to perform work related functions,

1  including bipolar disorder, anxiety disorder, including PTSD,

2  and migraines.

3          At step three, the Administrative Law Judge

4  concluded that plaintiff's conditions do not meet or

5  medically equal any of the listed presumptively disabling

6  conditions set forth in the Commissioner's regulations,

7  specifically considering listings 12.04, 12.06, and 12.15.

8          After surveying the record, ALJ Draper concluded

9  that plaintiff is capable of performing the requirements of

10 light work except with some additional limitations, including

11 physical and mental limitations.  The mental limitations are

12 that she can perform tasks learned in thirty days or less

13 involving simple work-related decisions requiring little to

14 no judgment, with only occasional workplace changes, with no

15 interaction with the public, and only occasional interaction

16 with co-workers and supervisors.  She can perform no work at

17 production-rate pace.

18         Applying that residual functional capacity, or RFC,

19 determination at step four, ALJ Draper concluded that

20 plaintiff is unable to perform her past relevant work.

21         Proceeding to step five, ALJ Draper noted that if

22 plaintiff were capable of performing a full range of light

23 work, the Medical-Vocational Guidelines set forth in the

24 Commissioner's regulations, and specifically Rule 202.17,

25 would direct a finding of no disability.  Because of the

1    additional non-exertional limitations, the testimony of a

2    vocational expert was elicited, and based on that testimony,

3    ALJ Draper concluded that plaintiff is capable of performing

4    available work in the national economy, including as a swatch

5    clerk, a packing header, and a blade balancer.

6              The Court's function, as you know, in this case is

7    to determine whether correct legal principles were applied by

8    the Administrative Law Judge and whether her decision is

9    supported by substantial evidence.  It is a deferential

10   standard, more demanding and exacting than the clearly

11   erroneous standard that we are generally familiar with.

12             Substantial evidence includes or means such

13   relevant evidence as a reasonable mind might accept as

14   adequate to support a conclusion.  The Second Circuit noted

15   in *Brault versus Social Security Administration*, 683 F.3d

16   443, that it is a demanding standard and the standard means

17   that once an ALJ finds a fact, the fact can be rejected only

18   if a reasonable factfinder would have to conclude otherwise.

19             In this case plaintiff has raised three

20   contentions, the third of which depends on the first two.

21   She challenges the weight afforded to the various medical

22   opinions in the record by the Administrative Law Judge,

23   including Dr. Aranda and Dr. Dubey, and the reliance on the

24   opinions of Dr. T. Harding, and also challenges the weighing

25   of Dr. Slowik's consultative examination report.

*Decision - 19-cv-798 - 7/29/2020*                      9

1           The second contention is that the residual

2    functional capacity is not supported because it does not make

3    any reference to plaintiff being off task or absent, and it

4    is contrary to every medical opinion addressing those two

5    issues.

6           The step-five argument, which is the third

7    argument, is that the hypothetical posed by the vocational

8    expert was flawed because it was not supported by substantial

9    evidence, it was based on a flawed RFC finding.

10          The Administrative Law Judge's task in this case

11   was first to determine plaintiff's residual functional

12   capacity, or RFC, which, of course, is pivotal to the finding

13   of no disability.  An RFC, of course, represents a range of

14   tasks that the plaintiff is capable of performing

15   notwithstanding her impairments.  An RFC is informed by

16   consideration of all of the relevant and other medical

17   evidence.  In deciding or determining an RFC, the ALJ must

18   assess plaintiff's exertional capabilities, such as her

19   ability to sit, stand, walk, lift, carry, push, and pull.

20   Non-exertional limitations must also be considered, and of

21   course the RFC determination must be supported by substantial

22   evidence.

23          In this case there is a wealth of medical opinions.

24   The regulations set forth the analysis that must be made when

25   medical evidence and medical opinions are evaluated.  They're

1   the same so-called *Burgess* factors that inform a

2   determination of whether to give controlling weight to a

3   treating source's opinions, and if not, what weight it should

4   be given.  Among the factors, they're set out at in this case

5   20 CFR Section 416.927.

6           As I indicated, there are several medical opinions

7   in the record, and I'll go through them briefly because I

8   think they're important to the analysis in this case.  The

9   first is from Dr. Subu Dubey from May 15, 2018.  It appears

10  at pages 482 and 483 of the Administrative Transcript.

11  Dr. Dubey finds extreme limitations in many areas, including

12  maintaining attention and concentration; perform activities

13  within a schedule, be punctual, perform at a consistent pace;

14  ability to interact appropriately with the general public;

15  ability to accept instructions and respond appropriately to

16  criticism from supervisors; ability to respond appropriately

17  to ordinary stressors in a work setting with simple tasks.

18          Dr. Dubey at page 483 opines that plaintiff would

19  be off task more than 33 percent of the day and would be

20  absent three or more days per month, and treatment as to

21  plaintiff's PTSD, bipolar disease, ADHD, and OCD, as well as

22  the general anxiety disorder.  I will note that I do not

23  agree with plaintiff that Dr. Dubey should be considered as a

24  treating source.  Dr. Dubey prior to rendering that opinion

25  only saw the plaintiff on two occasions, April 4, 2018 and

1   May 14, 2018, and under *Petrie versus Astrue*, 412 F. App'x

2   401, a Second Circuit decision from 2011, this would not

3   qualify him as a treating source.  It doesn't mean, however,

4   that his opinions are meaningless.  He is someone who has

5   examined the plaintiff and so his opinions must be considered

6   using the factors that we've discussed.

7          Dr. Aranda, who is a treating source, on May 14,

8   2018 rendered an opinion that appears at 479 and 480 of the

9   Administrative Transcript, and significantly Dr. Aranda

10  concludes that plaintiff would be off task more than

11  20 percent but less than 33 percent of the day, and absent

12  more than four days per month.  I note that Dr. Aranda

13  indicated next to the off task category, quote, "better

14  approximation by a neurologist."  Plaintiff did see a

15  neurologist, Dr. Ahmad Alwan, although there is no medical

16  source statement from that neurologist.

17          I should say that the Administrative Law Judge

18  accorded little weight to either Dr. Dubey or Dr. Aranda's

19  reports.  There is a consultative report from March 18, 2016

20  authored by Dr. Amanda Slowik.  It appears at pages 303 to

21  307.  It was given considerable weight by the Administrative

22  Law Judge.  In her medical source statement, Dr. Slowik found

23  no limitations in certain areas, mild limitations in others,

24  and made the following additional statement, "The claimant's

25  ability to maintain a regular schedule and appropriately deal

1    with stress is moderately to markedly limited."  As we

2    discussed during oral argument, although Dr. Slowik's

3    opinions were given considerable weight, at page 25 of the

4    Administrative Transcript, the ALJ did not discuss why any

5    limitation associated with the ability to maintain a schedule

6    is not included in the RFC.

7           There is a physical report of an examination by

8    Dr. Gilbert Jenouri also from March 18, 2016.  It appears at

9    311 to 314 of the Administrative Transcript.  And that

10   indicated mild restriction on walking, standing, and sitting

11   for long periods, bending, stair climbing, lifting, and

12   carrying.  That's at page 314.  It was given partial weight.

13   There's no indication that Dr. Jenouri considered or was

14   asked to consider whether plaintiff would be off task or

15   absent.  And as I indicated in oral argument, interestingly,

16   under chief complaints there is reference to lower back and

17   neck pain, hip pain, knee pain, but no indication of any

18   migraines.

19          The last opinion is from Dr. T. Harding, a

20   non-examining consultant, from March 31, 2016.  It appears at

21   Exhibit 2A of the Administrative Transcript.  In that

22   opinion, in the worksheet portion of the opinion, Dr. Harding

23   concludes that plaintiff is moderately limited in the ability

24   to perform activities within a schedule, maintain regular

25   attendance, and be punctual within customary tolerances.

*Decision - 19-cv-798 - 7/29/2020*                    13

1    Also indicates moderately limited in the ability to complete

2    a normal workday and workweek without interruptions from

3    psychologically based symptoms and to perform at a consistent

4    pace without an unreasonable number and length of rest

5    periods.  And when asked to explain in narrative form the

6    limitations expressed, he indicates "see below."

7            In his mental RFC opinion, Dr. Harding referenced a

8    couple of notes, treatment notes, referenced her ability to

9    perform some household activities of daily living, and

10   stated, quote, "Based on evidence in file, claimant retains

11   the ability to perform the basic mental demands of unskilled

12   work with limited social contact."  That was later reaffirmed

13   by Dr. Harding at pages 316 and 317 of the Administrative

14   Transcript.

15     A couple of observations when dealing with mental

16   issues, and in many cases, and this is no exception, there is

17   ebb and flow, there is cycling of mental conditions,

18   especially when you're dealing with bipolar disorder.  The

19   record is clear that there are times when plaintiff exhibited

20   troubling behavior, violent behavior, and there are other

21   times when she did not.

22     I also note that when you're dealing with such cases,

23   the opinions of a treating source, someone who has examined

24   the plaintiff and has some longitudinal history, it is

25   significant.  This was reflected in *Flynn versus Commissioner*

1   *of Social Security*, 729 F. App'x 119.  Unlike many physical

2   conditions, mental conditions do not always yield objective

3   evidence that would allow you to measure the condition or

4   many limitations.

5        I also note on the other side of the coin that it is for

6   the Administrative Law Judge to decide weight to be given to

7   conflicting medical opinions under the Second Circuit's

8   decision in *Veino*.  The problem with this case is that

9   literally every opinion that addresses the issue of schedule

10  finds some limitation in the ability to maintain attendance

11  and be on task.  If those opinions were improperly rejected,

12  the error is clearly harmful because the vocational expert

13  testified to employer tolerances, including eight days per

14  year of absences, that's at page 81, and 15 percent being off

15  task.  Dr. Slowik, as I indicated, found a moderate to marked

16  limitation in the ability to maintain a regular schedule.

17  The Administrative Law Judge is silent on why that opinion

18  was rejected.

19       Dr. T. Harding finds a moderate limitation in the

20  ability to perform within a schedule and complete a normal

21  workweek, and says, "see below for an explanation."  I don't

22  find the extent of that limitation was properly explained and

23  that the -- I do find that the mental residual functional

24  capacity explanation from Dr. Harding is woefully deficient.

25       One of my colleagues, Magistrate Judge Gregory Fouratt,

1    issued an opinion which is enlightening in terms of the

2    obligations of a consultative examiner like Dr. Harding in

3    *Milner versus Berryhill,* 2018 WL 461095, from the District of

4    New Mexico, January 18, 2018.  In this case in my view

5    Dr. Harding did not adequately comply with his obligations to

6    provide an explanation or the extent of the limitation on the

7    ability to perform within a schedule.

8         I also find that the treating physician report of

9    Dr. Aranda was not properly -- the rejection of it was not

10   properly explained.  As you know, a treating source is

11   entitled to controlling weight, the treating source opinions,

12   if it is supported by medically acceptable, clinical and

13   laboratory diagnostic techniques and not inconsistent with

14   other substantial evidence.  And if they're not afforded

15   controlling weight, then the *Burgess* factors must be examined

16   and a detailed discussion of the weight given to it should

17   follow.  I recognize that the Second Circuit has said,

18   including in *Estrella*, that the violation of the treating

19   source rule should not result in a remand if a searching

20   review of the record convinces the Court that the treating

21   source rule was not violated.  I cannot say that in this

22   case.

23        The unanimous opinions are that plaintiff suffers from

24   some degree of limitation in her ability to perform within a

25   schedule and stay on task.  There is case law that says that

1    if opinions are unanimous on an issue, the opinions can be

2    overridden only if there is overwhelming evidence to the

3    contrary, which I do not find in this case.

4        The Commissioner has cited a couple of cases which I

5    find are distinguishable.  One is *Heaman versus Berryhill*,

6    765 F. App'x 498.  That's from the Second Circuit, 2019.  In

7    that case the ALJ relied not on the ALJ lay opinion, but

8    rather the opinions of a consultative examiner, Dr. Magurno,

9    and a medical expert, Dr. Efobi, in addition to treatment

10   notes, clinical findings and diagnostic testing of record.

11   Here there aren't any medical opinions that support any

12   conclusion that plaintiff would not be absent and would not

13   be off task as opined.

14       Similarly, *Barry versus Colvin*, 606 F. App'x 621, from

15   the Second Circuit 2015, is distinguishable.  In that case

16   the medical source statement of the state agency psychologist

17   was credited and the statement was, as discussed above,

18   substantial evidence, including Barry's own statements,

19   treatment notes from her physicians, and the opinion of

20   Dr. Andrews, a state agency psychologist who concluded the

21   plaintiff had no significant limitations in performing

22   activities within a schedule, maintaining regular attendance,

23   or being punctual within customary tolerances supported the

24   RFC.  In this case Dr. Harding did find limitations in those

25   areas, and so I find *Barry* is also distinguishable.

*Decision - 19-cv-798 - 7/29/2020*

1    In conclusion, I find that the Commissioner's

2 determination is not supported by substantial evidence, the

3 residual functional capacity fails to consider the

4 limitations in plaintiff's ability to perform within a

5 schedule and to maintain on task status.  And that,

6 unfortunately, affected the step five determination where the

7 defendant must carry its burden, or his burden, because the

8 hypothetical posed to the vocational expert was not supported

9 by substantial evidence.

10    It's a close case because I think that one could

11 effectively argue that there is persuasive evidence of

12 disability in this case, but I'm not going to direct the

13 finding of disability.  I think the matter should be remanded

14 for a further consideration of plaintiff's ability to perform

15 on schedule and on task and an explanation of why, if it is

16 found that she can, why she can and on what basis that

17 conclusion is made.

18    So, I will grant judgment on the pleadings to plaintiff

19 without a directed finding of disability and remand the

20 matter for further consideration.

21    Thank you both for excellent presentations.  Please stay

22 safe.

23         *              *              *

24

25

C E R T I F I C A T I O N

       I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.


_____

EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter